UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>   v.<br><br>DIANE LOUISE ZOLLINGER,<br><br>                Defendant. | CASE NO. C22-0278TL<br><br>ORDER |

## I.  INTRODUCTION

Before the court is Plaintiff the United States of America's (the "Government") motion for entry of default judgment against Defendant Diane Louise Zollinger. Dkt. No. 14. The Court has reviewed the motion, the relevant portions of the record, and the governing law. Being fully advised, the court GRANTS the Government's motion for default judgment.

## II. BACKGROUND

This case arises out of events related to Ms. Zollinger's alleged violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"). *See* Dkt. No. 1 (complaint). Ms. Zollinger does business as Felix Custom Smoking and operates a food processing facility in Monroe, Washington. *Id.* ¶ 5 (stating that Felix Custom Smoking is a sole proprietorship in Washington State). She processes and sells "ready-to-eat seafood products, including jerky, hot smoked and cold smoked salmon." *Id.* ¶ 7. According to the Government, the products are typically picked up by customers at Ms. Zollinger's Washington facility and she does not offer her products for sale online. *Id.* Although Ms. Zollinger "primarily processes seafood products for private companies that pick up the seafood and independently distribute the seafood products" (*id.* ¶ 8), she "also processes seafood products for retail consumers, as well as selling branded products to the public at a retail store on-site at her facility" (*id.* ¶ 9; *see also id.* ¶¶ 9–10 (noting that she also sells seafood products "wholesale to a farmers' market vendor" and "has shipped products to out-of-state customers in Idaho and Colorado").

Relevant to this case, the U.S. Food and Drug Administration ("FDA") inspected Ms. Zollinger's facility during the following time periods: August 21 to September 19, 2018, and July 19 to September 8, 2021. *See id.* ¶ 29. During those inspections, the FDA found a resident strain of the pathogenic bacterium *Listeria monocytogenes* (*L. monocytogenes*) on various surfaces at her facility and in one of her finished seafood products and observed multiple violations of the seafood Hazard Analysis and Critical

Control Point Analysis ("HACCP") regulations and the Good Manufacturing Practice ("cGMP") regulations. *See id.* ¶¶ 29–49.

On March 9, 2022, the Government commenced this statutory injunction proceeding against Ms. Zollinger. Dkt. No. 1. The Government alleges that Ms. Zollinger is violating the FDCA "by causing food to become adulterated within the meaning of 21 U.S.C §§ 342(a)(1) and (4) while such articles are held for sale after shipment of one or more components in interstate commerce." *See* Dkt. No. 1 ¶¶ 1, 27. The Government seeks to permanently enjoin Ms. Zollinger from continuing to violate the FDCA. *See id.* at 1, 12 (citing 21 U.S.C. § 332(a)).

The Government served a summons and copy of the complaint on Ms. Zollinger at her personal residence on March 17, 2022. Dkt. No. 6. Ms. Zollinger has not appeared in this action or responded to the Government's complaint. On July 26, 2022, the Government moved for entry of default against Ms. Zollinger (Dkt. No. 11), and the Clerk entered default on July 27, 2022 (Dkt. No. 13). The Government now asks the court to enter a default judgment against Ms. Zollinger and a permanent injunction preventing Ms. Zollinger from continuing to violate the FDCA. Dkt. No. 14 at 1–2, 5–6; Dkt. No. 14-2.

### III.   ANALYSIS

The court begins by discussing the relevant legal standard governing motions for default judgment before discussing the merits of the Government's motion.

A. **Legal Standard**

If a defendant fails to plead or otherwise defend, the clerk enters the party's default. Fed. R. Civ. P. 55(a). Then, upon a plaintiff's request or motion, the court may grant default judgment for the plaintiff. *Id.* 55(b)(2). Entry of default judgment is left to the court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Because granting or denying relief is within the court's discretion, a defendant's default does not automatically entitle a plaintiff to a court-ordered judgment. *Id.* In exercising its discretion, the court considers seven factors (the "*Eitel* factors"): (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Generally, default judgment is a two-step process: first, the court determines that a default judgment should be entered; then, it determines the amount and character of the relief that should be awarded. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). At the default judgment stage, well-pleaded factual allegations in the complaint, except those related to damages, are considered admitted and are sufficient to establish a defendant's liability. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(b)(6); *TeleVideo*, 826 F.2d at 917–18. The court must ensure that the amount of damages is reasonable and demonstrated by the plaintiff's evidence. *See*

Fed. R. Civ. P. 55(b); Local Civil Rule 55(b)(2); *TeleVideo*, 826 F.2d at 917–18; *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002) ("[T]he evident policy of [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages."). And "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**B.     Jurisdiction**

"To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). First, there can be no reasonable dispute that the court has subject matter jurisdiction over this matter. The court has federal question jurisdiction, *see* 28 U.S.C. § 1331, over the Government's FDCA claim against Ms. Zollinger and its request for injunctive relief. *See* 21 U.S.C. § 332(a); 21 U.S.C. § 331(k); *see also* Dkt. No. 1 at 2–12 (complaint). Second, the court has personal jurisdiction over Ms. Zollinger because: she is doing business in Washington State as Felix Custom Smoking and the Government's claim arises from her conduct with respect to her Washington facility; she appears to be domiciled in Washington State; and she was properly served by the Government in Washington State. *See* Dkt. No. 1 ¶ 5; Dkt. No. 6 (affidavit of service); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (stating court may exercise general jurisdiction over defendant if the defendant is domiciled in the forum state); *Padded Spaces LLC v. Weiss*, No. C21-0751JLR, 2022 WL 2905887, at *2 (W.D. Wash. July 22, 2022) (discussing

requirements for the court's exercise of specific personal jurisdiction over a non-resident defendant).

C.   **Whether the *Eitel* Factors Favor Default Judgment**

Default judgment is warranted in this case because, on balance, the *Eitel* factors weigh in favor of such judgment. The court discusses each factor in turn.

**1. Possibility of Prejudice to Plaintiff**

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *See PepsiCo, Inc., v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Ms. Zollinger has demonstrated an unwillingness to participate in this lawsuit given her failure to respond to or otherwise defend against the Government's complaint. As a result, the Government will suffer prejudice if default judgment is not entered because it will "be denied the right to judicial resolution" of its claims and will be "without other recourse for recovery." *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 391 (C.D. Cal. 2005); *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("'[P]rejudice' exists where the plaintiff has no 'recourse for recovery' other than default judgment." (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003))). Thus, the first *Eitel* factor weighs in favor of entering default judgment.

**2. Substantive Merits and Sufficiency of the Complaint**

The second and third *Eitel* factors—the substantive merits of the plaintiff's claim and the sufficiency of the plaintiff's complaint—are frequently analyzed together. *PepsiCo*, 238 F. Supp. 2d at 1175. For these two factors to weigh in favor of default

judgment, the complaint's allegations must be sufficient to state a claim for relief. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this standard when the claims "cross the line from the conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). At the default judgment stage, the court "takes 'the well-pleaded factual allegations' in the complaint 'as true'"; however, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

The FDCA prohibits doing any act to a "food" that results in the "food" becoming "adulterated," "if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce." 21 U.S.C. § 331(k). Food is adulterated under the FDCA when it is "prepared, packed [and] held under insanitary conditions whereby [they] may become contaminated with filth or . . . rendered injurious to the health" in violation of 21 U.S.C. § 342(a)(4), or by bearing or containing "a poisonous or deleterious substance," which may render these products "injurious to health," in violation of 21 U.S.C. § 342(a)(1).

Here, the complaint sufficiently states a claim under the FDCA. First, Ms. Zollinger's seafood products are "food" subject to the FDCA. (*See* Dkt. No. 1 ¶¶ 7–10, 18; 21 U.S.C. § 321(f); 21 U.S.C. § 331(k); *United States v. Blue Ribbon Smoked Fish, Inc.*, 179 F. Supp. 2d 30, 42 (E.D.N.Y. 2001) (finding seafood products are food subject to the FDCA). Moreover, Ms. Zollinger's products satisfy the FDCA's interstate commerce requirement because they are made with ingredients shipped in interstate

commerce and are being held for sale. *See* Dkt. No. 1 ¶¶ 7–10; 21 U.S.C. § 321(b); 21 U.S.C. § 331(k); *Baker v. United States*, 932 F.2d 813, 814–15 (9th Cir. 1991) (holding that the "interstate commerce" provision in 21 U.S.C. § 331(k) "is satisfied even when only an ingredient is transported interstate"); *United States v. Kaplan*, 836 F.3d 1199, 1209–11 (9th Cir. 2016) (interpreting 21 U.S.C. § 331(k)'s "held for sale" requirement and stating that "a sale in the strict sense" need not occur and that courts should focus "on the commercial nature of the transaction, actors, and products").

Finally, the allegations in the complaint establish that Ms. Zollinger's seafood products were adulterated under 21 U.S.C. § 342(a)(1) and (4). For example, the complaint alleges that Ms. Zollinger's food is adulterated under 21 U.S.C. § 342(a)(4) because she prepared, packed, and held her seafood in a facility contaminated by a resident strain of *L. monocytogenes*; violated the seafood HACCP regulations by, among other things, failing to control for the food toxins *L. monocytogenes* and *C. botulinum*; and violated the food cGMP regulations by, among other things, harboring living and dead flies too numerous to count. Dkt. No. 1 ¶¶ 27-38; *see, e.g.*, *United States v. Gel Spice Co.*, 601 F. Supp. 1205, 1211 (E.D.N.Y. 1984) (stating that food is adulterated under 21 U.S.C. § 342(a)(4) if it is "held under insanitary conditions, creating a reasonable possibility of contamination; proof of actual contamination is not required"); *United States v. Scotty's Inc.*, 173 F. Supp. 3d 549, 554 (E.D. Mich. 2016) (stating that violations of the HACCP regulations and cGMP regulations are "independently indicative of a food being adulterated within the meaning of" 21 U.S.C. § 342(a)(4)); 21 C.F.R. §§ 123.6(g), 123.12(d); 21 C.F.R. § 117.1(a). The complaint also alleges that

Ms. Zollinger's seafood is adulterated under 21 U.S.C. § 342(a)(1) because it contains *L. monocytogenes*. Dkt. No. 1 ¶¶ 11, 29, 33–35; *see, e.g.*, *Blue Ribbon Smoked Fish*, 179 F. Supp. 2d at 48 (concluding that fish products were adulterated because they contained *L. monocytogenes*).

Because the Government has sufficiently alleged the elements of its claim, the Court concludes that the second and third *Eitel* factors weigh in favor of default judgment.[1]

### 3. Sum of Money at Stake

The fourth *Eitel* factor considers the sum of money at stake in a case "in relation to the seriousness of the defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. When a plaintiff seeks only injunctive relief and no monetary damages in its motion for default judgment, the fourth *Eitel* factor weighs in favor of default judgment. *See id.* at 1176–77. Here, the Government seeks only a permanent injunction preventing Ms. Zollinger from continuing to violate the FDCA. Dkt. No. 14 at 1–2, 5–6; *see also* Dkt. No. 14-2 (detailing the injunctive relief sought). Accordingly, the Court finds that the fourth factor supports entry of default judgment.

### 4. Possibility of a Dispute over Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F. Supp. 2d at 1177. Because Ms. Zollinger never responded to the Government's complaint, the court must take all well-pleaded allegations in the

---

[1] The court discusses whether the Government has satisfied the requirements for the issuance of permanent injunction under 21 U.S.C. § 332(a) below. *See infra* Section III.D.

complaint as true, except those related to damages. *TeleVideo*, 826 F.2d at 917–18. Accordingly, there is nothing to suggest a possible dispute of material facts in this case, and this factor weighs in favor of granting default judgment.

**5. Excusable Neglect**

The sixth *Eitel* factor considers the possibility that the defendant's default resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177. Courts may consider whether there are circumstances surrounding a party's failure to respond that constitute excusable neglect. *Eitel*, 782 F.2d at 1472 (finding defendant's failure to answer due to excusable neglect where the parties reached a settlement agreement prior to the deadline to answer). However, excusable neglect may "be lacking where a defendant was properly served with the complaint and notice of default judgment." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 889–90 (S.D. Cal. 2021).

Here, the Government timely served Ms. Zollinger with a summons and copy of the complaint on March 17, 2022. Dkt. No. 6. Ms. Zollinger's answer was originally due on April 7, 2022, but the parties agreed to extend her response deadline until May 31, 2022. *See* Dkt. No. 7; Dkt. No. 10; Dkt. No. 15 ¶ 5. Counsel for the Government sent Ms. Zollinger the filings that extended her answer deadline and conveyed the new deadline to her. Dkt. No. 15 ¶ 5; *see also id.* ¶ 7 (noting that, prior to the answer deadline, counsel for the Government suggested that Ms. Zollinger "engag[e] legal consultation" and that Ms. Zollinger informed counsel of her intent to close or sell her business). Ms. Zollinger did not file an answer, but the Government nevertheless waited until July 26, 2022, to file its motion for default. There is nothing in the record to indicate that

Ms. Zollinger lacked notice of the action or was misled. Accordingly, the Court concludes that Ms. Zollinger's failure to answer the complaint was not due to excusable neglect and that the sixth *Eitel* factor thus weighs in favor of default judgment. *See, e.g.*, *Nw. Adm'rs, Inc. v. Nat'l Convention Servs., LLC*, No. C22-1519JLR, 2023 WL 2466538, at *5 (W.D. Wash. Mar. 10, 2023) (finding no excusable neglect under similar circumstances).

### 6. Policy Favoring Decisions on the Merits

Although there is a preference for deciding cases on the merits, this preference is not an absolute requirement. *See Vawter v. Quality Loan Serv. Corp. of Wash.*, No. C09-1585JLR, 2011 WL 1584424, at *3 (W.D. Wash. Apr. 27, 2011). Where, as here, the defendant's "failure to answer [the c]omplaint makes a decision on the merits impractical, if not impossible," the "preference to decide cases on the merits does not preclude [t]he court from granting default judgment." *PepsiCo*, 238 F. Supp. 2d at 1177. Because Ms. Zollinger's failure to answer the Government's complaint makes adjudication on the merits impossible, the court concludes that the seventh *Eitel* factor also favors entry of default judgment.

Because the *Eitel* factors weigh heavily in favor of default judgment, the Court concludes that default judgment is warranted in favor of the Government on its claims against Ms. Zollinger.

**D.     Injunctive Relief**

The court now turns to the issue of remedies. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P.

54(c); *see also Henry v. Sneiders*, 490 F.2d 315, 317 & n.2 (9th Cir. 1974). Although the district court need not accept as true allegations regarding the amount of damages at this phase, *see TeleVideo*, 826 F.2d at 917, other factual allegations are accepted as true, including those establishing the extent of the defendant's liability, *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Here, the Government seeks permanent injunctive relief under 21 U.S.C. § 332(a), which authorizes district courts "to restrain violations of section 331" of the FDCA "for cause shown." 21 U.S.C. § 332(a). This relief does not differ from the relief requested in its complaint. Dkt. No. 14 at 1–2, 5–6; Dkt. No. 1 at 1, 12; Dkt. No. 14-2.

In determining if injunctive relief is warranted, courts are required to apply the "traditional four-factor framework that governs the award of injunctive relief" unless Congress clearly indicates otherwise. *See Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979–80 (9th Cir. 2011); *Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1089–90 (9th Cir. 2015). The FDCA provides the "most settled example" of "Congressional intent to eliminate equity considerations in suits by enforcement agencies." *Perez v. Valley Garlic, Inc.*, No. C16-1156, 2017 WL 772147, at *18 (E.D. Cal. Feb. 27, 2017) (citing 21 U.S.C. § 332(a)); *see also United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987) (addressing 21 U.S.C. § 332(a) and holding that "[w]here an injunction is authorized by statute, and the statutory conditions are satisfied . . . , the agency to whom the enforcement of the right has been entrusted is not required to show irreparable injury"); *United States v. Diapulse Corp. of Am.*, 457

F.2d 25, 28 (2d Cir. 1972) ("The passage of the [FDCA] is, in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained.").

Thus, in this statutory enforcement action, the Government is entitled to a statutory injunction under the FDCA if it establishes that Ms. Zollinger violated the FDCA and that there is "some cognizable danger of recurrent violations."[2] *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("[I]f the defendant [wishes to avoid an injunction, it must] demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'"); *Odessa Union*, 833 F.2d at 175–76; *see also Organic Pastures Dairy Co.*, 708 F. Supp. 2d at 1011–12.

First, the Government has established that Ms. Zollinger violated 21 U.S.C. § 331(k) by causing food to become adulterated within the meaning of 21 U.S.C. §§ 342(a)(1) and (4) while such articles are held for sale after shipment of one or more components in interstate commerce. *See supra* Section III.C. Considering the allegations in the complaint, the court concludes that the Government has also established that there is some reasonable likelihood that the violations may recur. *See Odessa Union*, 833 F.2d at 176. "The probability of future violations may be inferred from past unlawful conduct." *Organic Pastures Dairy Co.*, 708 F. Supp. 2d at 1012 (first citing *Odessa*

---

[2] The Court notes that some courts require the plaintiff in a statutory enforcement action to also show that the equities weigh in favor of injunctive relief. *Compare Odessa Union*, 833 F.2d at 176, *and F.T.C. v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989), *with United States v. Organic Pastures Dairy Co.*, 708 F. Supp. 2d 1005, 1011–12 (E.D. Cal. 2010), *and Blue Ribbon Smoked Fish*, 179 F. Supp. 2d at 50. To the extent that such a showing is required, the Court finds that the need to protect the public health and the public's interest in consuming unadulterated food outweigh any burden Ms. Zollinger may face in having to comply with the government regulations. Accordingly, the equities weigh in favor of injunctive relief.

*Union*, 833 F.2d at 176; and then citing *Blue Ribbon Smoked Fish*, 179 F. Supp. 2d at 50).

  Second, the Government has established that Ms. Zollinger's violations are likely to recur. The Government plausibly alleges that Ms. Zollinger has repeatedly violated, and continues to violate, the FDCA, despite receiving notice of her violations following the 2018 and 2021 inspections. After the FDA found a resident strain of *L. monocytogenes* at Ms. Zollinger's facility and in one of her finished seafood products during the 2021 inspection, it held five phone calls with Ms. Zollinger regarding the significance of its findings and urged her "to take appropriate corrective actions," including "a voluntary recall of her seafood products." *See* Dkt. No. 1 ¶¶ 29–35, 44–45. Ms. Zollinger, however, repeatedly declined to do so. *Id.* ¶ 45. Moreover, she "has not ceased operations and continues to process ready-to-eat seafood" despite the unsanitary conditions at her facility. *Id.* ¶ 48. Nor has she attempted to bring her operations into compliance with the seafood HAACP or the food cGMP regulations. *Id.* ¶ 49. Thus, although Ms. Zollinger informed the Government that she intends to close or sell her business (Dkt. No. 15 ¶ 6), Ms. Zollinger's continued noncompliance with food processing regulations and the presence of a resident strain of the pathogenic bacteria *L. monocytogenes* at her facility pose an ongoing threat to public health that will persist unless the strict sanitation measures identified in the proposed injunction are implemented (*see* Dkt. No. 1 ¶¶ 11–17, 29–49). Accordingly, taking as true the factual allegations in the complaint, *TeleVideo*, 826 F.2d at 917; *Fair Housing of Marin*, 285 F.3d at 906, the court concludes that Ms. Zollinger is likely to violate the FDCA again in

the future. *See, e.g.*, *United States v. Innovative Biodefense, Inc.*, No. C18-996, 2020 WL 5035857, at *15 (C.D. Cal. May 4, 2020); *Blue Ribbon Smoked Fish*, 179 F. Supp. 2d at 50.

The Government has therefore established its entitlement to a permanent injunction under the FDCA.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS the Government's motion for default judgment and its request for a permanent injunction (Dkt. No. 14). The Court will enter a final judgment and permanent injunction following the entry of this order.

Dated this 15th day of March, 2023.

Tana Lin
United States District Judge